CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED
2014 AUG 25  AM 9: 56
DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ODELL M. WILSON, | § | |
| Plaintiff, | § § § | |
| vs. | § § | Civil Action No. 1:13-CV-00042-BL |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | § § § § | |
| Defendant. | § § | Assigned to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Pursuant to 42 U.S.C. § 405(g), Plaintiff Odell M. Wilson (Wilson) seeks judicial review of the Commissioner of Social Security's decision, which denied his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. All parties consented to the jurisdiction of the U.S. Magistrate Judge and the United States District Judge ordered the case be reassigned to this court.

After considering all the pleadings, briefs, and administrative record, this court affirms the Commissioner's decision and dismisses, with prejudice, Wilson's complaint.

### Statement of the Case

Following a hearing on August 18, 2011, an Administrative Law Judge (ALJ) determined on October 5, 2011, that Wilson was not under a disability from October 8, 2002, through December 31, 2009, Wilson's date last insured.[1]

---

[1] Initially Wilson alleged impairments that became disabling October 8, 2002. (Tr. 13, 56-57). At the hearing, Wilson amended his onset date to December 31, 2009, the same as his date last insured (DLI). (Tr. 13, 15).

Specifically, the ALJ held that Wilson: did not engage in any substantial gainful activity (SGA) from his alleged onset date; had several severe impairments; had no impairments meeting or equaling the Appendix 1 listed impairments (20 C.F.R. 404.1520(d), 404.1525, and 404.1526); had the residual functional capacity (RFC) to perform light work with limitations; and was unable to perform any past relevant work. Further, the ALJ held that considering Wilson's age, education, work experience, and RFC, there existed jobs in the national economy that Wilson could have performed. (Tr. 13-22).

The Appeals Council denied review on November 9, 2012. (Tr. 6-8). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

### Factual Background

Prior to his alleged disability, Wilson was primarily employed as an installer of fire and burglar alarms. (Tr. 33). He also worked as an electrician helper in the past, on both ordinary buildings and oil rigs. (Tr. 33, 49-50). On October 8, 2002, Wilson fell off a ladder while in the course of his employment. (Tr. 33). He suffered a broken left elbow and a concussion. Pl's Br. 4. Though he tried to go back to work following the accident, Wilson was unable to maintain employment. (Tr. 33). Numerous medical professionals evaluated and treated Wilson for both elbow- and head-related issues. (Tr. 19, 179-282, 335-371, 388-391).

The day of the accident, Wilson saw Paul Lansing, II, M.D., for overall evaluation, and Charles P. Murphy, M.D., for more specific orthopedic evaluation. (Tr. 211, 214). Drs. Lansing and Murphy continued to treat Wilson through January of 2003. (Tr. 235). On December 4, 2002, Wilson saw R. Hugh Fleming, M.D., for a neurological evaluation. (Tr. 215-19). Wilson

had several further neuropsychological evaluations throughout December of 2002 performed by Kelvin W. Greve, Ph.D. (Tr. 220-233). From January 28, 2003, to August 22, 2008, over roughly twenty three sessions, Wilson saw Morteza Shamsnia, M.D., for neurological treatment. (Tr. 336-71).[2] Wilson also received psychotherapy treatment by Megan A. Ciota, Ph.D., from February 2, 2003, to June 12, 2003. (Tr. 264-78). On August 6, 2003, Debra L. Burris, M.D., performed another neurological evaluation on Wilson. (Tr. 279-82).

Regarding Wilson's elbow, Drs. Lansing and Murphy diagnosed a radial head fracture, and suggested non-operative treatment, including wearing an arm sling, applying a cold pack, and elevating the elbow. (Tr. 211-12, 214). Wilson also received physical therapy for his elbow injury from Leslie Milligan, P.T. (Tr. 179-80, 182-86, 188). On December 4, 2002, Dr. Murphy noted that Wilson could return to work with several restrictions, including: no repetitive lifting over five pounds, no pushing and/or pulling over five pounds of force, and limited use of Wilson's left arm. (Tr. 256). On December 15, 2002, Dr. Lansing released Wilson back to work with several restrictions, including: no repetitive lifting over twenty pounds, no pushing and/or pulling over thirty pounds of force, and no bending greater than one time per hour. (Tr. 249).

Much of the other treatment Wilson received related to his concussion, which contributed to headaches and neck and back pain. On December 4, 2002, Dr. Fleming, having performed a neurological exam on Wilson, noted that the exam was normal, that a CAT scan showed no abnormality, and that an EMG showed no evidence of denervation or cervical root pathology. (Tr. 217). Dr. Fleming then recommended a trial of medication (Neurontin 300mg) and a formal neuropsychological evaluation for post-traumatic stress disorder due to Wilson's continued complaints of pain in his head and neck. (Tr. 217). Dr. Greve performed the formal

---

[2] On August 27, 2008, by referral from Dr. Shamsnia, Wilson was examined and given an MRI by Lawrence W. Glorioso, III, M.D. (Tr. 342-45).

neuropsychological evaluation over a period of three days in December of 2002. (Tr. 220). Dr. Greve noted that the data collected from the evaluation suggested that "Wilson gave poor or inconsistent effort during the evaluation and that he has exaggerated his somatic complaints." (Tr. 220). In summary, Dr. Greve noted that Wilson was "not disabled from a cognitive or emotional perspective." (Tr. 232). Dr. Greve then recommended brief rehabilitative treatment to address Wilson's concentration and attention, and brief counseling to address Wilson's anxiety and depression. (Tr. 220-21, 232-33).

From February 2003 to December 2003, Wilson saw a psychologist, Megan Ciota, Ph.D., over fourteen sessions. (Tr. 264-78). By the end, Dr. Ciota noted that Wilson was "not disabled from a psychological perspective." (Tr. 264). In August of 2003, Wilson visited Debra Burris, M.D., for a neurological evaluation, after which Dr. Burris, while deferring decisions related to Wilson's psychological limitations to his psychologist, noted that "Wilson should be able to return to light work despite his continued headaches." (Tr. 282).

Dr. Shamsnia, who saw Wilson from January 2003 to August 2008, focused on Wilson's neurological health. (Tr. 335-71). Over the twenty three visits, Dr. Shamsnia largely prescribed then refilled medication for Wilson's head, neck and back pain. (Tr. 335-71). Complaints of depression and trouble sleeping also appear in the notes of the five years and eight months of treatment. (Tr. 335-71). At the first treatment session, Dr. Shamsnia recommended an MRI and an EMG. (Tr. 370). As noted, an EMG had in fact already been done and interpreted by Dr. Fleming. (Tr. 217). A second EMG and an MRI of the cervical spine were done in August of 2008. (Tr. 341-45). Andrea Fritz, M.D., noted that a CT scan of Wilson's brain was unremarkable, and that up through October of 2008, the evidence showed no worsening of Wilson's condition. (Tr. 386). Other reviewing doctors reported similar sentiments. (Tr. 386,

392)

On October 19, 2005, Bob Dodd, M.D., performed a physical RFC assessment, noting a number of exertional limitations. (Tr. 307). On November 2, 2005, psychologist Steven M. Osborn, Ph.D., performed a psychological consultative exam, noting Wilson displayed depression and a personality disorder and slow responsive speech, but also noting that Wilson's perceptions and thought content and processes were normal and coherent. (Tr. 314-15).

A state agency medical reviewer, Stephanie Judice, M.D., performed a mental RFC assessment on November 9, 2005, noting that Wilson can "understand, remember, and carry out only simple instructions [and] make simple decisions," but that he could "attend and concentrate for extended periods, interact adequately with co-workers and supervisors, [and] respond appropriately to changes in routine work setting." (Tr. 319).

## Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work;

and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452.).

## Discussion

Wilson raises two issues. First, that the ALJ erred by not acknowledging the treatment records of Dr. Shamsnia. Pl.'s Br. 3-5. Second, the ALJ failed to develop the record by not obtaining a Medical Source Statement from Dr. Shamsnia. Pl.'s Br. 5-6.

### I. The ALJ Properly Considered All Of Wilson's Treatment Records

Wilson alleges that the ALJ erred by not acknowledging the treatment notes of Dr. Shamsnia. Pl.'s Br. 3-5. An ALJ must "consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . receive[d]." 20 C.F.R. § 404.1527(b). Generally, a treating physician's opinion deserves more weight than the opinion of a non-treating physician. 20 C.F.R. § 404.1527(c)(2); *see, e.g., Bradley v. Bowen*, 809 F.2d 1054 (5th Cir. 1987). It is well settled that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley*, 809 F.2d at 1057 (citation omitted). Further, "the ALJ is free to choose among the conclusions of two examining physicians, even though one is the claimant's treating physician." *Id.* However, "[t]he ALJ is bound by the rules of this Court to explain his reasons for rejecting a claimant's complaints of pain." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *see Abshire v. Bowen*, 848 F.2d 638 (5th Cir. 1988).

Wilson was treated by Dr. Shamsnia for headaches, neck pain, back pain, carpal tunnel syndrome, obesity, and depression. (Tr. 336-37, 347-64, 368-69). The ALJ, without explicitly mentioning Dr. Shamsnia's name, did in fact acknowledge Dr. Shamsnia's treatment notes by laying out Wilson's subjective complaints of pain, which were contained in Dr. Shamsnia's treatment notes. (Tr. 18-19). He then found, based on the objective medical evidence of several treating physicians, that Wilson was not fully credible. (Tr. 18-20).

To the extent that Dr. Shamsnia's treatment notes contained medical opinions under 20

C.F.R. § 404.1527(a)(2) that were consistent with other medical opinions on the record, explained and relied upon by the ALJ, they were cumulative and need not have been reiterated. To the extent Dr. Shamsnia's treatment notes contained medical opinions that were inconsistent with the rest of the medical opinions on the record, the ALJ had discretion to choose among the conclusions of different examining physicians. *Bradley*, 809 F.2d at 1057; *see Muse v. Sullivan*, 925 F.2d 785, 790 (5th. Cir 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (finding a treating physician's opinion not entitled to controlling weight in part because it was inconsistent with two other opinions, which were based on clinical test results); *Prosch v. Apfel*, 201 F.3d 1010 (8th Cir. 2000) ("It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record."). To the extent Dr. Shamsnia's treatment notes contained simply Wilson's subjective complaints of pain, the ALJ devoted appropriate attention and explanation thereto under *Falco* and *Abshire*. *See Falco*, 27 F.3d at 160; *Abshire*, 848 F.2d at 638.[3]

Additionally, as the Commissioner points out, Dr. Shamsnia in his treatment notes does not place any work-related restrictions on Wilson. Def.'s Br. 7; *see* Tr. 335-71. Neither do Dr. Shamsnia's notes contain a conclusion that Wilson was disabled. (Tr. 335-71). Wilson does not allege either that the ALJ disregarded a physician's pronouncement of Wilson as disabled, or that another physician pronounced Wilson disabled. Indeed, no physician of record stated that Wilson

---

[3] Without commenting on the depth of treatment Wilson received from Dr. Shamsnia, much of the content of the treatment records of Dr. Shamsnia was presented in a fairly rigid formula, to wit: Patient returns for a follow up visit; Patient's symptoms are essentially unchanged; I am refilling his medications. Dr. Shamsnia changed dosages and requested follow up procedures, but a notable portion of these treatment notes were reflections of Wilson's subjective complaints of pain. (*See* Tr. 368, 364, 363, 362, 361, 359, 358, 357, 356, 355, 354, 353, 352, 351, 348, 347).

was disabled. *See Harper v. Sullivan*, 887 F.2d 92 (5th Cir. 1989) (finding substantial evidence of an ALJ's finding that claimant's complaints were not "borne out of the credible medical findings of record" when no physician of record pronounced that claimant was disabled).

In short, the ALJ considered the treatment records of all treating physicians. (Tr. 18). The ALJ acknowledged Dr. Shamsnia's treatment notes when he acknowledged and discussed Wilson's subjective complaints of pain contained therein. (Tr. 18-19). Finally, the ALJ's determination that Wilson was not fully credible was supported by the objective medical evidence of several treating physicians. (Tr. 19). Thus, substantial evidence supports the ALJ's determinations.

## II. The ALJ Did Not Err By Not Obtaining A Medical Source Statement From Dr. Shamsnia

Next, Wilson claims the ALJ failed to develop the record by not obtaining a medical source statement regarding Wilson's physical impairments from Dr. Shamsnia. Pl.'s Br. 5-6. Specifically, Wilson claims that the ALJ's reliance on two treating physicians who opined in 2002 and 2003 that Wilson could return to work was error because these opinions were made more than six years prior to Wilson's amended onset date. Pl.'s Br. 6.

20 C.F.R. § 1520b details how the ALJ considers medical evidence to make findings. To reconcile inconsistent evidence, the ALJ may take additional actions, including requesting more records or ordering a consultative examination. *See* 20 C.F.R. § 1520b. However, the ALJ may also "weigh the relevant evidence and see whether [he] can determine [disability] based on the evidence [it] ha[s]." 20 C.F.R. § 1520b(b). Further, "[t]he ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d

552, 557 (5th Cir. 1995). Yet, the courts must balance this duty against the claimant's own burden of proof through the first four steps of the sequential evaluation process. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). As the Fifth Circuit has succinctly stated, "The claimant has the burden of proving his disability and the ALJ has a duty to fully develop the facts." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

Here, the ALJ considered the entire record. *See* Tr. 15-21; 20 C.F.R. § 1520b(b). The ALJ had discretion, after discerning inconsistent medical opinion on the record, to weigh the relevant evidence and see whether he could determine disability based on that evidence. *See* 20 C.F.R. 1520b(b); *see also* Tr. 18-20 (ALJ considered Wilson's complaints of pain, which Wilson echoed in Dr. Shamsnia's treatment notes, in making disability determination). The record, including Dr. Shamsnia's notes and the notes of several other treating physicians, provided an adequate picture both for reviewing doctors to make supportable determinations, and for the ALJ to make his determination. (Tr. 18-20, 386, 387, 392).[4]

Wilson claims the ALJ erred in relying on opinions made approximately six years before the amended onset date, during which time Wilson was still suffering from various ailments. Pl.'s Br. 6. However, as noted above, the ALJ considered Wilson's allegations (including carpal tunnel syndrome, back and neck disorders, and left arm issues) and gave reasons why Wilson was not fully credible as to these ailments. (Tr. 18-20); *see* Pl.'s Br. 6. Moreover, Andrea Fritz, M.D., after reviewing the entire record, indicated that there was "no evidence of any worsening of [Wilson's] condition." (Tr. 386). John Ferguson, Ph.D., also reviewing the full record, echoed Dr. Fritz's conclusion. (Tr. 387). The ALJ, by incorporating Wilson's allegations of pain into his RFC determination, sufficiently developed the facts of the case at hand under *Leggett*. *See*

---

[4] As one analyzing doctor noted, "voluminous records [were] submitted by the claimant." (Tr. 386).

*Leggett*, 67 F.3d at 566.

The ultimate inquiry for the court is whether substantial evidence supports the Commissioner's decision. *See, e.g., Falco*, 27 F.3d at 163. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994). In this case, substantial evidence supports the ALJ's determinations.

## Conclusion

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** and Wilson's complaint is **DISMISSED** with prejudice. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED.**

Dated: August 25, 2014.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**